**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| PATRICIA J. ROOT, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TARA GOLD RESOURCES CORP., FRANCIS R. BISCAN, JR. CLIFFORD A. BROWN, and TARA MINERALS CORP.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   No. 1:10-cv-07584<br>   Hon. William J. Hibbler |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR 12(b)(1) MOTION TO DISMISS FOR LACK OF RIPENESS

Plaintiff Patricia J. Root ("Root"), individually and on behalf of all others similarly situated, comes before this Court with three press releases seeking an advisory opinion that the "proposed acquisition" of Tara Gold Resources Corp. ("Tara Gold") by Tara Minerals Corp. ("Tara Minerals"), the final terms of which are unknown and which may never even reach a stockholder vote, should be enjoined.  According to the press releases, the Boards of Directors of Defendants Tara Gold and Tara Minerals have unanimously approved a tentative agreement to exchange shareholders' stock.  (Compl. ¶ 1.)  However, Tara Gold and Tara Minerals, both Nevada corporations, have taken none of the steps required by Nevada law to advance the transaction beyond the press releases towards completion, namely: (1) preparing and adopting a written plan of exchange (N.R.S. 92A.110), (2) submitting a plan of exchange for approval by stockholder vote (N.R.S. 92A.120), and (3) scheduling a meeting to vote and providing stockholders notice thereof (N.R.S. 92A.120(4), 78.370).  This proposed transaction is far from occurring, has no final terms, and may never even reach a vote.  In light of these "unknowns,"

this Court must decline to intervene at a premature stage and, instead, dismiss this case under Federal Rule of Civil Procedure 12(b)(1) on grounds of ripeness.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) provides that Defendants may assert by motion the defense of "lack of subject matter jurisdiction." "If a claim is not ripe, the court lacks subject matter jurisdiction." *W/G Kristina 123, LLC v. Melena*, No. 08 C 3462, 2009 WL 249414, *2 (N.D. Ill. Feb. 3, 2009), citing *Flying J Inc. v. City of New Haven*, 549 F.3d 538 (7th Cir. 2008).

On a 12(b)(1) motion, as with other motions to dismiss, "we accept all of the well-pleaded factual allegation in the plaintiff's complaint as true and draw all reasonable interferences..." *Patel v. City of Chicago*, 383 F.3d 569, 572 (7th Cir. 2004) (dismissing unripe claim). However, plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Beam v. Gonzales*, 548 F. Supp. 2d 596, 601 (N.D. Ill. 2008). Further, because federal courts "presume that [they] lack jurisdiction 'unless the contrary appears affirmatively in the record,'" it is the Plaintiff's responsibility to clearly allege facts that invoke federal court jurisdiction." *Id.* (citations omitted).

In addition, on a 12(b)(1) motion, the Court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capital Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993). To that end, Defendants attach hereto as Exhibit 1 the Second Declaration of Francis R. Biscan, Jr. ("Sec. Biscan Dec.") which sets forth the facts that Tara Gold and Tara Minerals have not prepared or adopted a plan of exchange, submitted such a plan of exchange for approval by shareholder vote, or scheduled and noticed a meeting for a shareholder vote, all of which are required under Nevada law to consummate the exchange

transaction. (Sec. Biscan Dec. ¶ 4.) In light of those facts, this case is not ripe and must be dismissed for lack of subject matter jurisdiction.

## FACTS

Pursuant to Plaintiff's Complaint and the Second Biscan Declaration, the facts of this case are as follows:

Tara Gold and Tara Minerals are Nevada corporations with their principal places of business in Illinois. (Compl. ¶¶ 5-8.) Tara Gold and Tara Minerals are involved in the "acquisition, exploration, and development of" precious metals and minerals, respectively. *Id.* Tara Gold owns approximately 80% of Tara Minerals' common stock. (Compl. ¶ 9.) Individual defendant Francis R. Biscan, Jr. ("Biscan") is Tara Gold's President, Chief Executive Officer, and a member of the Board of Directors, as well as Tara Minerals' President, Chief Executive Officer, and director. (Compl. ¶ 6.) Individual Defendant Clifford A. Brown ("Brown") is Tara Gold's director and Principal Financial and Accounting Officer, as well as Tara Minerals' director and Controller of U.S. Operations. (Compl. ¶ 7.)

Plaintiff Patricia Root ("Root"), as well as the putative class she represents, are owners of Tara Gold common stock. (Compl. ¶¶ 4, 15.) Plaintiff's Complaint and its allegations are based upon three press releases from Tara Gold[1]:

1) <u>September 13, 2010 Press Release</u> (Compl. ¶ 22; Sec. Biscan Dec. Ex. A.):

Tara Minerals and Tara Gold "have entered into a tentative agreement for Tara Minerals to acquire all of the common shares of Tara Gold in a transaction valued at approximately US $83 million (the "Transaction"). Pursuant to the definitive agreement, two (2) Tara Gold shares will he exchanged for one (1) Tara Minerals share, representing a premium of 125% over the closing market price of [Tara Gold] as of September 10, 2010. The

---

[1] Under Seventh Circuit law, "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Rosenblum v. Travelbyus.com Ltd.*, 299 F.2d 657, 661 (7th Cir. 2002). The press releases, as the core of Plaintiffs' claims, can accordingly be attached and considered in full. Further, the press releases are attached to and authenticated in the Second Declaration of Francis R. Biscan, Jr.

Transaction has been unanimously approved by the Board of Director of each of Tara Minerals and Tara Gold.

Tara Gold currently owns 40,897,440 shares of Tara Minerals, representing approximately US $66 million of the Transaction value. These shares will be cancelled upon closing of the Transaction. In addition to the Tara Minerals shares, Tara Gold also has the following assets…. [list, including a loan of US $1.5 million from Tara Minerals to Tara Gold, omitted].

Tara Gold and Tara Minerals management has recommended that their shareholders support the Transaction. The Transaction requires approval of non-affiliate shareholders owning a majority of the outstanding shares of Tara Minerals and Tara Gold. The Transaction is expected to be completed in 2010….

Statements in this document regarding the Transaction, the expected timetable for completing the Transaction, benefits and synergies of the Transaction… constitute forward-looking statements within the meaning of [securities law]…. There are a number of important factors that could cause actual results or events to differ materially… including… the ability of the parties to consummate the Transaction…; [and] the ability to obtain… shareholder or stockholder approvals for the Transaction;…"

2) September 16, 2010 Press Release (Compl. ¶ 27; Sec. Biscan Dec. Ex. B):

"On September 13, 2010, Tara Gold announced that it has entered into a tentative agreement with Tara Mineral whereas Tara Minerals will acquire all of the common shares of Tara Gold by exchanging one (1) Tara Minerals share for two (2) Tara Gold shares. Tara Gold and Tara Minerals management has recommended that their shareholders support the Transaction. In an effort to avoid any conflicts due to common Directors, the Transaction requires the approval of non-affiliate shareholders owning a majority of the outstanding shares of Tara Minerals and Tara Gold. The Transaction is expected to be completed in 2010.

Since this announcement, several law firms have announced that they may commence an investigation into the potential acquisition of Tara Gold by Tara Minerals in an effort to ensure fair value is received by Tara Gold shareholders….

As noted in the September 10, 2010 press release, the Transaction is tentative and is subject to approval of shareholders of Tara Gold who are not Officers or Directors of Tara Gold and vice versa. Management of both companies supports the Transaction and will work towards getting the required non-affiliate vote to close the Transaction in 2010.

Shareholders should also be aware that, on May 6, 2010, the Securities and Exchange Commission temporarily suspended the trading in the securities of a number of corporations, including Tara Gold, due to the failure of these corporations to file 10-K and 10-Q reports with the SEC (see release dated May 12, 2010). Tara Gold had already initiated efforts to meet its financial reporting obligations and has since filed its 2007 10-

K report. Tara Gold will complete all the financials required to close the acquisition, which may differ in some respects to the requirements if Tara Gold continued as an independent concern. This effort is well advanced.

On September 14, 2010, the Company received a letter dated September 7, 2010 whereby an SEC Administrative Law Judge made an initial decision to revoke Tara Gold's registration under Section 12(j) of the Securities Exchange Act. This initial decision may become effective as soon as September 28, 2010, in which case Tara Gold's common stock would stop trading. However, and irrespective of Tara Gold's trading status, the proposed acquisition of Tara Gold by Tara Minerals will continue to move forward.

Tara Gold management would like to make shareholders aware of all scenarios so that they may make an informed decision.

1. Tara Gold shareholders who believe the consideration offered by Tara Minerals is too low can exercise dissenters' rights under Nevada Law and attempt to receive a higher value for their shares. Tara Gold will also consider all other acquisition offers.

2. Tara Gold believes that the price of its shares over the past several years has been adversely affected by repeated short selling…."

3) <u>October 14, 2010 Press Release</u> (Compl. ¶ 31; Sec. Biscan Dec. Ex. C):

"On May 6, 2010, the Securities and Exchange Commission temporarily suspended trading in Tara Gold's securities due to the failure of Tara Gold to file its 10-Q and 10-K reports pursuant to Section 13 of the Securities Exchange Act of 1934.

On the same day the Commission issued an Order Instituting Proceedings whereby the Commission sought to revoke Tara Gold's registration of its common stock pursuant to Section 12(j) of the Exchange Act.

On September 7, 2010 an Administrative Law Judge issued an Initial Decision revoking Tara Gold's registration of its common stock….

On September 24, 2010 Tara Gold filed a Petition to Review the decision of the administrative law judge. On September 30, 2010 the Commission granted Tara Gold's Petition for Review….

After all briefs and replies have been filed [circa December 15, 2010], the Commission will decide if Tara Gold's registration pursuant to section 12(j) of the Exchange Act should be revoked….

The [Tara Gold and Tara Minerals] Transaction continues to progress and further details will be distributed upon Tara Gold filing its 10-Q and 10-K reports…."

These three press releases are the only information in Plaintiff's Complaint about the otherwise unknown terms and timing of the proposed transaction between Tara Gold and Tara Minerals, which may never reach a shareholder vote, let alone be consummated.

Amidst this uncertainty, eight days later, on October 22, 2010, Plaintiff filed her Verified Class Action Complaint in the Circuit Court of DuPage County, Illinois, consisting of three counts: breach of fiduciary duty against the individual defendants (count I), breach of fiduciary duty of disclosure against the individual defendants (count II), and aiding and abetting the board's breaches of fiduciary duty against Tara Gold and Tara Minerals (count III). On November 24, 2010, Defendants' filed their Notice of Removal to this Court under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).

Plaintiff's allegations about breaches of fiduciary or fraud in the proposed transaction, based upon her review of the three press releases, concern six "unknown" aspects of the transaction: (1) status ("tentative" or "definitive") (Compl. ¶¶ 1, 28, 33); (2) fair price (Compl. ¶¶ 23, 30, 37, 41); (3) forthcoming information about the transactions terms and negotiations (Compl. ¶ 25, 42); (4) financial disclosure dates (Compl. ¶ 26); (5) SEC review date (Compl. ¶ 32.); and (6) independent review (Compl. ¶¶ 24, 34-35, 43-44). As Plaintiff's Complaint acknowledges, Tara Gold and Tara Minerals could make this information available, even if they allegedly had not done so as of the Complaint's filing date, before taking steps under Nevada law to consummate the exchange. (Compl. ¶¶ 25, 26, 28, 30, 32, 34, 42, 43). Put another way, Plaintiff alleges that she does not yet have this information, but would need it, before voting.

In fact, however, no vote is scheduled. (Sec. Biscan Dec. ¶ 4.) Tara Gold and Tara Minerals have not even begun the approval process under Nevada law, which would require: (1) preparation or adoption of a written plan of exchange (N.R.S. 92A.110), (2) submission of a plan

of exchange for approval by stockholder vote (N.R.S. 92A.120), or (3) scheduling a meeting to vote and providing stockholders notice thereof (N.R.S. 92A.120(4), 78.370). (Sec. Biscan Dec. ¶ 4.) Assuming the approval process began, the parties agree that the shareholders would have the dissenters' rights provided for by Nevada law. (N.R.S. § 92A.300 to 92A.500; Compl. ¶ 30; Sec. Biscan Dec. Ex. B, para. 1.) At present, though, there is no date on which any of the required steps under Nevada law to consummate the exchange will occur, if at all. (Sec. Biscan Dec. ¶ 4.)

## ARGUMENT

Plaintiff asks this Court to look at a sea of alleged unknowns and enjoin a proposed transaction that has no final terms, no plan of exchange, no vote date, and may never occur. It is impossible under these circumstances to make any ruling that is not both speculative and advisory. To provide an example, a ruling would necessarily entail saying, "If Tara Gold and Tara Minerals prepared a plan of exchange, and if at that time the SEC review (for instance) was still incomplete, and if the SEC's review was necessary information to the shareholders, and if Tara Gold and Tara Minerals submitted the plan for approval at a scheduled and noticed meeting, despite the review's incompletion, then this Court should enjoin the vote pending the SEC's review." This Court should not be in the business of providing "pick-a-path" style advice. The case is simply not ripe, and the Court should dismiss for lack of subject matter jurisdiction.

## I.   THE PROPOSED TRANSACTION BETWEEN TARA GOLD AND TARA MINERALS IS NOT RIPE FOR REVIEW UNDER THE NEVADA BUSINESS CORPORATIONS LAW.

Nevada law sets out a host of steps that Tara Gold and Tara Minerals are required to complete to consummate the proposed exchange. According to the allegations of the Complaint from the press releases, and as confirmed by the Second Declaration of Francis R. Biscan, Jr., the only action Tara Gold and Tara Minerals have taken is to have their Boards of Directors reach a

"tentative agreement" which contains some broad strokes of what will eventually be the "definitive agreement." (Sec. Biscan Dec. Ex. A, ¶ 4.) At each of the missing, required steps, there are opportunities for the "unknowns" raised in Plaintiff's Complaint to be addressed.

To begin, Tara Gold and Tara Minerals have not prepared a written plan of exchange, which would set out: (a) the names and jurisdictions of the parties, (b) the names, jurisdictions, and kinds of entities whose owner's interests will be acquired, (c) "the terms and conditions of the exchange," and (d) "the manner and basis, if any, of exchanging the owner's interests to be acquired for owner's interests, rights to purchase owner's interests, or other securities of the acquiring or any other entity or for cash or other property in whole or in part or cancelling such owner's interests in whole or in part." (Sec. Biscan Dec. ¶ 4; N.R.S. 92A.110(2).) This step provides an opportunity for Tara Gold and Tara Minerals to make the deal status definitive, not tentative; to establish the basis for the fair price; to provide information on the process, the financials, and outside review; and to address the SEC review's status and its relevance. In the alternative, Tara Gold may never prepare a plan of exchange, either in light of the "unknowns" or for completely unrelated reasons. In either event, absent a plan of exchange, the case is not ripe under Nevada law.

The next required step would be submission of the plan of exchange to the shareholders for a vote. (Sec. Biscan Dec. ¶ 4; N.R.S. 92A.120.) Again, this step provides an opportunity for Tara Gold and Tara Minerals to address the unknowns, or to halt the process completely, for these or other reasons. Yet another required step would be scheduling and noticing a meeting for the shareholders to vote upon the plan of exchange. (Sec. Biscan Dec. ¶ 4; N.R.S. 92A.120(4).) Under Nevada law, that notice must be given not less than 10 days nor more than 60 days before the meeting. (N.R.S. 78.370(3).) Were any unknowns remaining, there would again be an

opportunity to address the unknowns, or to decide not to vote, for these or other reasons. Finally, if the only issue remaining were fair price, that issue is addressed completely by the Nevada dissenter's rights. (N.R.S. 92A.300 to 92A.500.)

The Nevada Supreme Court's decision in *Cohen v. Mirage Resorts*, 119 Nev. 1, 62 P.3d 720 (2003) on dissenters' rights highlights the need to dismiss this case for ripeness. In *Cohen*, the plaintiff, a former minority shareholder, complained after the completion of a corporate merger that there had been breaches of fiduciary duty, among other violations, by the board of directors. The Court found that the dissenters' rights statute did not prohibit Cohen from challenging the merger based upon fraud or unlawful conduct, assuming he was not aware of the conduct prior to the merger and prior to his failure to exercise his dissenters' rights. In so deciding, the Court spelled out a dissatisfied shareholder's options. "Absent unlawful procedures or fraud, a minority shareholder has only two options when confronted with a merger," "dissent from the merger and seek an independent valuation" or "tender his or her shares and accept the merger price for the stock." *Id.*, 119 Nev. at 12, 62 P.3d at 728. On the other hand, "a dissenting shareholder who wishes to attack the validity of the merger or seek monetary damages based upon improper actions during the merger process must allege wrongful conduct that goes to the approval of the merger." *Id.*, 119 Nev. at 13, 62 P.2d at 728. While "claims challenging the validity of a merger should be asserted before the completion of the merger," if injunctive relief is the goal, there needs to be actual "conduct or procedures in the approval process" upon which to base those claims. *Id.*, 119 Nev. at 13-14, 62 P.2d 728-29.

In this case, the "approval process" has not even begun. At best, Plaintiff has three press releases and the Boards' approval and recommendation of a tentative agreement. There is no written plan of exchange, nor has such a plan been approved, submitted to shareholders, or

noticed and scheduled for a vote. (Sec. Biscan Dec. ¶ 4.) These steps may never happen and, if they do, there are countless opportunities for changes in the facts when that process is underway. Should Tara Gold and Tara Minerals take the actions to move the "tentative agreement" through the "approval process," Plaintiff would be free to request dissenters' rights or to try to allege fraud, should any exist under the facts at that time. At present, however, Tara Gold and Tara Minerals have not even taken the first required step of preparing a written plan of exchange, and, hence, this case must be dismissed for lack of ripeness.

## II.  RIPENESS CASE LAW SUPPORTS DISMISSAL WHERE NO VOTE IS PENDING.

Courts consistently dismiss cases for lack of ripeness where no vote is pending. As the Nevada Supreme Court notes in *Cohen*, Nevada looks to the case law of Delaware and New York in interpreting its business corporations act. *Id.* at n. 9. In *Stroud v. Milliken Enterprises, Inc.*, 552 A.2d 476 (1989), for instance, the Delaware Supreme Court refused to rule on a "proposed revised notice" which would have asked shareholders to vote upon charter and bylaw amendments, but which had not (and might never be) submitted to the shareholders for a vote. The Court emphasized that it is not "required to entertain suits seeking an advisory opinion or an adjudication of hypothetical questions." *Stroud*, 552 A.2d at 479 (citation omitted). There are "two basic reasons" for this position: "first, judicial resources are limited and must not be squandered on disagreements that have no significant current impact and *may never ripen* into legal action," and "second, to the extent that the judicial branch contributes to law creation…, it legitimately does so because it is required to do so by reason of *specific facts* that necessitate a judicial judgment." *Id.* at 480 (emphasis added) (citation omitted). As a result, "whenever a court examines a matter where facts are not fully developed, it runs the risk not only of granting an incorrect judgment, but also of taking an inappropriate or premature step in the development

of the law." *Id.* For these reasons, courts "demand" that the "dispute between the parties be close to a 'concrete and final form'" *Id.* at 481 (citation omitted). This result is consistently repeated. *See Bebchuk v. CA, Inc.*, 902 A.2d 737 (Court of Chancery 2006) (proposed bylaw on shareholder rights plan unripe); *General Datacomm Indus., Inc. v. State of Wisc. Inv. Bd.*, 731 A.2d 818 (Court of Chancery 1999) (validity of bylaw not ripe). When there is no certainty of a vote, a dismissal for ripeness is necessary.

Our local courts agree with these principals. In *E.E.O.C. v. City Colleges of Chicago*, 740 F. Supp. 508, 511 (N.D. Ill. 1990), this court held that the defendant union's counterclaim requesting a declaratory judgment on the legality of a "tentative" successor early retirement plan was not ripe. As this court pointed out, the plan was labeled as "tentative," was "not in effect," and "may never become effective." *Id.* In such a case, "there is no 'existing legal dispute." *Id.* As this court explained, the counterclaimant "has simply come to this court seeking 'advice on the legality of a proposed course of action' – something this court cannot give." *Id.*, citing *Crowley Cutlery Co. v. U.S.*, 849 F.2d 273, 276 (7th Cir. 1988) ("You cannot go to federal court for advice on the legality of a proposed course of action. You must be party to an existing legal dispute."). Where there is only a "potential controversy" over a "tentative" plan, "which will become actual only after a number of events have occurred," then the case is not ripe for adjudication. *Id.*, at 512.

This case is no different. The proposed transaction may never occur. The current facts amount to a list of "unknowns" on a transaction in its infancy. The tentative agreement may never mature to a plan of exchange, nor be submitted to shareholders, nor be noticed, nor be scheduled for a vote. If and when those steps occur, the facts and "unknowns" may or may not be the same. The facts may allow only for dissenters' rights, rather than the current alleged

11

speculation about fraud. In any event, the time to decide is not now, but then. Therefore, this Court should dismiss this case under Rule 12(b)(1) for lack of subject matter jurisdiction, due to lack of ripeness.

**CONCLUSION**

For the above reasons, this Court should dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction based upon lack of ripeness.

Dated: December 8, 2010                    Respectfully submitted,

By: /s/ Martin B. Carroll
Martin B. Carroll
Travis Wolfinger
Tracy Katz Muhl
**FOX, HEFTER, SWIBEL,
  LEVIN & CARROLL, LLP**
200 West Madison Street, Suite 300
Chicago, Illinois 60606
(312) 224-1200
(312) 224-1202 (fax)
Email: mcarroll@fhslc.com
**Attorneys for Defendants
Tara Gold Resources Corp.,
Francis R. Biscan, Jr.,
Clifford A. Brown, and
Tara Minerals Corp.**